## SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

## UNIVEST, INC., et al., Defendants.

### No. 75 C 1488.

United States District Court,
N. D. Illinois, E. D.

Nov. 18, 1975.

Ruling on Motion Jan. 14, 1976.

Barry D. Goldman, Jeffrey I. Bernstein, Chicago, Ill., for plaintiff.

Joel J. Bellows, Charles B. Bernstein, Chicago, Ill., for defendants.

AUSTIN, District Judge.

## JUDGMENT ORDER

The Defendants, Univest, Inc., John Chalupa and Theodore Wynn have moved to dismiss the complaint filed against them pursuant to Rule 12 of the Federal Rules of Civil Procedure. For the following reasons, that motion will be granted.

## FACTS

The Securities and Exchange Commission (S.E.C.) filed suit against these Defendants, who engaged in the sale of options to buy and sell commodity futures contracts. While engaging in these sales, the S.E.C. charged that the Defendants violated various provisions of the Securities Act of 1933, the Securities Exchange Act of 1934 and regulations promulgated under this statutory authority. During the time that the S.E.C. was investigating this matter, but prior to the time suit was actually filed, the Commodity Futures Trading Commission Act of 1974, 7 U.S.C. § 1 et seq., became effective.

## IMPACT OF THE COMMODITY ACT

■ This new statute, which went into effect on April 21, 1975, serves to strip the S.E.C. of standing to bring this suit. The text of the Commodity Act of 1974 and its legislative history indicates to me that under this particular factual pattern, the new Commodity Futures Trading Commission, and not the S.E.C., has exclusive jurisdiction over this conduct. The test of § 2 of the Commodity Act states:

> . . . *Provided,* That the Commission [the new Commodity Commission] shall have exclusive jurisdiction with respect to accounts, agreements (including any transaction which is of the character of . . . an "option",

> * * * and transactions involving contracts of sale of a commodity for future delivery . . .

To me, that language plainly states that exclusive jurisdiction is vested in the Commodity Commission; that group, and not the S.E.C., is empowered to bring a suit in a situation like that presently before the court.

The Plaintiff's argument that the second proviso within Section 2 somehow negates that grant of exclusive jurisdiction is simply invalid. That second proviso states:

> . . . and provided further, That except as hereinabove provided, nothing contained in this section shall (i) supersede or limit the jurisdiction . . . conferred on the Securities and Exchange Commission . . . or (ii) restrict the Securities and Exchange Commission . . . from carrying out their duties and responsibilities in accordance with such laws.

The key phrase in this proviso is the introductory one; I must assume that it means exactly what it says. The fact is that the statements "hereinabove provided" do limit the jurisdiction of the S.E.C. with regard to commodity futures trading. In effect, those statements transfer jurisdiction from the S.E.C. to the new Commodity Futures Trading Commission.

The legislative history of this legislation indicates that a transfer of jurisdiction was intended by the Congress. An earlier version of the Act, passed only by the House of Representatives, reserved the jurisdiction of the S.E.C., but that reservation was eliminated in the Bill that was ultimately enacted by the entire Congress. H.R.Rep.No.93–975, 93d Cong., 2d Sess. 87 (1974). U.S.Code Cong. & Admin.News, p. 5843. The Senate Committee on Agriculture and Forestry, which dealt with the finalized version of the legislation, said this about the amendments which were added:

> The clarifying amendments make clear that (a) the [Commodity Futures Trading] Commission's jurisdiction over fu-

tures contract markets and other exchanges is exclusive and includes the regulation of commodity accounts, commodity trading agreements, and commodity options; (b) the Commission's jurisdiction, where applicable, supersedes State as well as Federal agencies . . . S.Rep.No.93–1131, 93d Cong., 2d Sess. 6 (1974), U.S.Code Cong. & Admin.News, pp. 5843, 5848.

The Chairman of that Senate Committee elaborated on the intended purpose of the Congress in enacting this legislation. Senator Talmadge said:

> It was the intent of the Committees to fill all regulatory gaps—to regulate trading in futures and in options relating to commodities or commodity futures, because such trading is poorly regulated . . . . [The earlier version of this legislation indicated that] nothing in that Act would supersede or limit the jurisdiction of the S.E.C. . . . The Senate refined this language in an attempt to avoid unnecessary overlapping and duplicative regulation. Staff of Senate Comm. on Agriculture and Forestry, 93d Cong., 2d Sess. The Commodity Futures Trading Commission Act of 1974, 6 (Comm. Print 1974).

The Senate version was the one finally enacted into law and by the statute's very terms, it does avoid any overlapping regulation by placing exclusive jurisdiction in the hands of this new Commodity Commission.

The S.E.C. argues that Section 412 of Public Law 94–463 permits it to act as Plaintiff in this action, but I disagree. That section provides that:

> *Pending* proceedings under existing law shall not be abated by reason of any provision of this Act but shall be disposed of pursuant to the applicable provisions of the Commodity Exchange Act, as amended . . . .

The fact is that this action was not "pending" prior to the effective date of the new statute. Suit was not filed by the S.E.C. until after the effective date of the Commodity Futures Trading Act of 1974 and consequently, the provisions of the new Act come into effect with regard to the actions which led to the filing of this complaint. The S.E.C. itself acknowledged in its briefs that Section 412 was enacted to avoid any regulatory gaps during the period between enactment and effectiveness of the new Act. Section 412 accomplishes this goal, but it does not permit the S.E.C. to file this suit after the effective date of the new statute.

The S.E.C. was entitled to continue any investigation commenced prior to the effective date, but any information developed from those inquiries should have been turned over to the proper party for prosecution. In this instance, the proper party was the new Commodity Commission. The Congress, by enacting this legislation, created a body with special expertise in the commodities field and it is my belief that the wording of the statute removes standing from the S.E.C. and vests it in the "new" experts—the Commodity Futures Trading Commission. I must follow the dictates of the Congress in this matter and allow the proper party to prosecute any alleged violators.

Since this matter is disposed of on these grounds alone, there is no need to reach the other issues raised by the parties. For the foregoing reasons, the Defendants' motion to dismiss is granted.

### RULING ON MOTION

The Plaintiff in this litigation, the Securities and Exchange Commission, has moved that the court alter or amend the Judgment Order entered in this action on November 18, 1975. Upon consideration of the arguments presented by the Commission, I must alter that order insofar as it granted a motion to dismiss the entire complaint. I now believe that the motion to dismiss must be denied as to Counts IV, V, and VI of the original complaint.

Those Counts refer to promissory notes issued by the Defendant in April of 1974 and sold to people who were

creditors of Univest. It is alleged that these instruments constituted "securities" within the terms of the Securities Act of 1933 and the Securities Exchange Act of 1934 and, furthermore, that these notes were unregistered.

■ The arguments presented by the Commission are persuasive; I believe that these notes can be referred to as securities. Courts consistently interpret the statutory term "security" in a broad manner. *See, e. g., Tcherepnin v. Knight,* 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); *Securities and Exchange Commission v. C. M. Joiner Leasing Corp.,* 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943); *Lehigh Valley Trust Co. v. Central National Bank,* 409 F.2d 989 (5th Cir. 1969). The Seventh Circuit also recognized that the definition of the term security is a flexible one to be construed in light of the purpose of the various securities acts. *Sanders v. John Nuveen & Co.,* 463 F.2d 1075 (7th Cir. 1972). Some courts have even gone so far as to state that almost all notes are securities today. *Rekant v. Desser,* 425 F.2d 872 (5th Cir. 1970).

A number of decisions focus upon the distinction between "commercial paper" and "investment paper". True commercial paper is not subject to the 1933 and 1934 Securities Acts while investment paper comes within the purview of those statutes. *See e. g., C. N. S. Enterprises, Inv. v. G & G Enterprises, Inc.,* 508 F.2d 1354 (7th Cir. 1975). It is my opinion that these notes appear to possess the characteristics of investment, rather than commercial, paper. The Securities and Exchange Commission, in its Securities Act Release No. 4412 (26 Fed.Reg. at 9159), outlines a number of factors which could be considered in the making of this determination. The court, in *Securities and Exchange Commission v. Continental Commodities Corp.,* 497 F.2d 516, 525 (5th Cir. 1974), discussed that release in these terms:

This release . . . sets forth four factors which underscore the commercial-investment dichotomy of notes. These factors are that the notes are (1) of prime quality; (2) used to finance current transactions; (3) not offered to the public; (4) and discountable at a Federal Reserve Bank. . . [I]t would appear that notes issued by a company . . . in precarious financial straits are not either prime quality, issued to facilitate current transactions, or eligible for discounting by Federal Reserve Banks.

I must agree with this conclusion and further note that the record before me indicates that Univest was in "precarious financial straits," to say the least.

■ Statutory exemptions to the registration requirements are construed very narrowly today, and I agree with that philosophy. *See e. g., Zeller v. Bogue Electric Manufacturing Corp.,* 476 F.2d 795 (2d Cir. 1973). It remains to be seen whether or not this was a "public" offering as that term has been defined by case law, but I cannot, as a matter of law, now conclude that the people who purchased these notes possessed access equivalent to that made available by a registration statement. *See generally Gilligan Will & Co., v. Securities and Exchange Commission,* 267 F.2d 471 (2d Cir. 1959). These facts must be developed more fully at trial.

For these reasons, the Plaintiff's motion to alter or amend the Judgment Order of November 18, 1975 is granted, but only so that Counts IV, V and VI are resurrected. The remaining portion of that November order continues to stand; Counts IV, V and VI now provide a separate basis of jurisdiction upon which the Securities and Exchange Commission may bring suit.