**Martin COHEN and Ben Smolen, Plaintiffs,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and Merrill Lynch Futures, Inc., Defendants.**

**No. 87 Civ. 2920 (MJL).**

United States District Court, S.D. New York.

Sept. 15, 1989.

As Amended Oct. 6, 1989.

Rabin & Sirota by I. Stephen Rabin and Lowey Dannenberg & Knapp, P.C. by R.B. Dannenberg, New York City, for plaintiff.

Brown & Wood by A. Robert Pietrzak and Joan Bianco, New York City, for defendants.

## OPINION AND ORDER

LOWE, District Judge.

This is an action alleging misrepresentations, material omissions, and fraud by the defendants in connection with the purchase and sale of securities. Defendants Merrill Lynch, Pierce, Fenner & Smith, Inc., ("Merrill Lynch") and Merrill Lynch Futures, Inc. ("Merrill Lynch Futures") have moved to dismiss plaintiffs' complaint pursuant to Federal Rules of Civil Procedure ("F.R.Civ. P.") 9(b), 12(b)(1) and 12(b)(6). For the reasons stated below, the motion is granted.

## BACKGROUND

In the Spring of 1986, Cohen and Smolen each invested $50,000 in the Leveraged Combination Investment ("LCI") offered by Merrill Lynch Futures and its parent company Merrill Lynch, an investment banking and stock brokerage firm. The LCI is an investment program that trades commodity futures and options on commodity futures. The program incorporates a blend of stock index futures and options on futures with the goal of realizing consistent returns.

According to the plaintiffs, the LCI was marketed by the defendants as a low risk investment option. In practice, however, they say it was quite the opposite. Cohen claims that by June 20, 1986, at the closing of his account, he had incurred a loss of $15,609. Smolen claims that when his account was closed on June 27, 1986, he had incurred a loss of approximately $15,000.

Cohen and Smolen filed suit on April 29, 1987 to recover their alleged losses. The substance of their claim is that the defendants knowingly made false representations and concealed material facts concerning the risks and profitability of the LCI program in violation of Section 10(b) of the Securities Exchange Act (the "Exchange Act"), 15 U.S.C. 78j(b), and Rule 10b–5 of the Securities and Exchange Commission ("SEC"). 17 C.F.R. § 240.10b–5.[1] The plaintiffs also invoke our pendent jurisdiction in alleging a second cause of action for common law fraud and deceit in connection with their investment in the LCI.

Thereafter, the defendants filed the present motion. Their central argument in support of their claim for relief is that the transactions of which plaintiffs complain did not involve the purchase or sale of

---

1. Section 10(b) of the Exchange Act prohibits any person from using or employing

   in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

   SEC Rule 10b–5, promulgated thereunder, in part provides that it shall be unlawful for any person

   [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

securities, as required by § 10(b) and Rule 10b–5. Rather, they involved trades in commodity futures and options on commodity futures.

## DISCUSSION

The term "security", as employed in the Exchange Act of 1934, refers to a broad variety of financial instruments traded for speculation or investment, including "investment contracts". 15 U.S.C. § 78c(a)(10). An "investment contract" is a contract, transaction or scheme whereby a person (1) invests money (2) in a common enterprise (3) with profits to come solely from the efforts of others. *See SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); *SEC v. Glenn W. Turner Enterprises*, 474 F.2d 476 (9th Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973).

As stated above, the plaintiffs traded in commodity futures and options on commodity futures. The term "commodity futures" refers to a standardized contract for purchase and sale of a fixed quantity of a particular commodity, for delivery in a specified future month, at a price agreed upon when the contract is made. *Mallen v. Merrill Lynch, Pierce, Fenner & Smith*, 605 F.Supp. 1105 (N.D. Georgia 1985). It is well settled that commodity futures are not securities, and never have been, within the meaning of Section 10 or Rule 10b–5. *Mallen*, 605 F.Supp. at 1107; *Scheer v. Merrill Lynch, Pierce, Fenner & Smith*, CCH Fed. Sec.L.Rep. [1974–75 Transfer Binder] ¶ 95,086, 1975 WL 390 (S.D.N.Y.1974); *Berman v. Orimex Trading, Inc.*, 291 F.Supp. 701, 702 (S.D.N.Y.1968); *Sniva, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 253 F.Supp. 359 (S.D.N.Y.1966). Thus, it would appear that the plaintiffs have failed to state a claim for relief under these provisions.

However, the plaintiffs assert that the discretionary commodity account in which they traded was in effect an "investment contract", and thus that their claim falls within the jurisdiction of the securities laws. We disagree.

Prior to 1974, some courts found that, although underlying futures contracts were not securities, the accounts in which they were traded qualified as securities under the above-mentioned three-part "investment contract" test.[2] In 1974, however, Congress extensively amended the Commodity and Exchange Act ("CEA"), which previously had applied only to transactions in certain agricultural commodities, by enacting the Commodity Futures Trading Commission Act ("CFTC Act"). The CFTC Act transferred commodities regulation from the administration of the Commodity Exchange Authority, a part of the Department of Agriculture, to the newly created Commodity Futures Trading Commission (CFTC). Furthermore, all futures accounts became subject to exclusive CEA and CFTC jurisdiction when the definition of "commodity" was expanded beyond specific food items to include "transactions involving contracts of sale of a commodity for future delivery...." 7 U.S.C. § 2; *See S.E.C. v. Univest, Inc.*, 405 F.Supp. 1057 (N.D.Ill.1975), *rem'd mem.*, 556 F.2d 584 (7th Cir.1977).

The legislative history of the 1974 amendments further reflects Congress' intent to preclude application of the federal securities laws to commodities accounts, including discretionary commodities accounts. *See Commodities Futures Trading Commission Act of 1974: Hearings on S.2485, S.2578, S.2837 and H.R. 13113 Before the Senate Committee on Agriculture and Forestry*, 93 Cong., 2d Sess. 541 (1974) (cited in Raisler, *Discretionary Commodity Accounts: Why They Are Not Governed By The Federal Securities*

---

**2.** Courts endorsing this view almost always found the first element of this test—the investment of money. The second element—a common enterprise—has been found in the relationship between either customers and brokers (known as "vertical commonality"), or customers and other customers (known as "horizontal commonality"). The third element—profits derived from the efforts of others—was often found based on the rationale that an investor granted authority to his broker to make purchases and sales of commodity futures contracts. *See Mallen*, 605 F.Supp. at 1107–1108.

*Laws,* 42 Wash. & Lee.L.Rev. 752 (1985)). Federal courts have adhered to this intent and have recognized that the provisions of the federal securities laws are not applicable to commodity futures trading accounts. *Saxe v. E.F. Hutton & Co., Inc.,* 789 F.2d 105 (2d Cir.1986) (affirming dismissal of suit on the grounds that any remedy from grievance related to a discretionary commodities account lies within the exclusive jurisdiction of the CEA, not the Exchange Act); *Curran v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 622 F.2d 216, 221–24 (6th Cir.1980), *aff'd,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982); *Gonzalez v. Paine Weber, Jackson & Curtis,* [1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,867 at 94,514, 1982 WL 1348 (S.D.N.Y.1982) ("the pervasive regulatory scheme established under the Commodity Exchange Act has preempted the field insofar as futures regulation is concerned").

Accordingly, Cohen and Smolen, who traded in a discretionary commodities account, have failed to state a valid claim for relief under the securities laws. We therefore dismiss the federal cause of action. We must also dismiss the pendent state fraud claim, since we now have no jurisdiction over it. *United Mine Workers v. Gibbs,* 383 U.S. 715, 727, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966); *McLearn v. Cowen & Co.* 660 F.2d 845 (2d Cir.1981); *See also Bucher v. Shumway,* [1979–80 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,142 at 96,296, 1979 WL 1254 (S.D.N.Y. 1979), *aff'd,* 622 F.2d 572 (2d. Cir.1980), *cert. denied,* 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980).

It Is So Ordered.