**Madeleine BEHETTE, Victor Samara, William Samara, George Shahwan, Theodore Hamway, Abraham Hamway, Michael Behette, Anthony Behette, and Robert Quat, Plaintiffs,**

v.

**James SALEEBY, Harry Horowitz, Senator Realty, 301 Sterling St. Corp., 32 Snyder Realty Corp., 1154 Realty Corp., Malsha Realty Corp., 1004 Realty Corp., 690 Realty Corp., Vicsam Realty Corp., Salor Realty Corp., and Horsal Realty Corp., Defendants.**

No. CV 93–3248.

United States District Court, E.D. New York.

Jan. 25, 1994.

Joseph J.J. Visci, Brooklyn, NY, for plaintiffs.

Wolf Halderstein Adler Freeman & Hertz (Daniel W. Krasner and Neil L. Zola, of counsel), New York City, for defendants Saleeby, Horowitz and Senator Realty.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiffs, nine individual investors, brought this action against James Saleeby and Harry Horowitz; their realty company, Senator Realty; and eleven corporations owned by the investors and the individual defendants. The 160–paragraph complaint purports to state nine claims, from RICO and securities regulation violations to state law fraud. Jurisdiction is based on the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, and the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*

Plaintiffs brought an Order to Show Cause seeking (a) the attachment of the assets of defendants Saleeby, Horowitz, and Senator Realty; (b) an injunction preventing those defendants from taking any action on behalf of the other defendant corporations; (c) copies of an extensive list of business records; and (d) an accounting. Defendants Saleeby, Horowitz, and Senator Realty moved to dismiss the complaint.

### I

The complaint is 38 pages long and unsigned. It purports to attach exhibits, but to the extent the court can find them they appear under different labels as exhibits to plaintiffs' Order to Show Cause. Construing plaintiffs' pleadings liberally in the extreme, as far as the court can determine, the complaint alleges, in substance, the following.

### A. *General Investment Information*

Starting in December 1986 Saleeby and Horowitz induced the plaintiffs to invest money in the defendant corporations, formed to own and operate residential apartment buildings in Brooklyn and the Bronx.

At unspecified times, starting in December 1986, Saleeby and Horowitz told plaintiffs that the two of them would not receive an ownership interest in the corporations, that they would manage the investments and the properties for no fee, and that their sole compensation would be 10% of the profit gained when the properties were sold. Also at unspecified times, Saleeby and Horowitz mailed and telegraphed to plaintiffs income and expense statements regarding the properties.

### B. *Specific Investments*

With funds invested by plaintiffs, defendant 32 Snyder Realty Corp. purchased its property in 1987. Plaintiff Madeleine Behette invested $54,000 and was told she would receive a 33% interest in the property. In fact, she discovered at an unspecified date that she had received a 20% interest and that Saleeby and Horowitz had each received a 20% interest as well.

32 Snyder Realty Corp. sold the property in 1989 for $225,000 more than the purchase price, but Madeleine Behette received only $56,000. Saleeby and Horowitz explained that she received little more than the amount she invested because they had to pay expenses, but they did not document those expenses.

Madeleine Behette invested $125,000 in defendant 301 Sterling Street Corp. in December 1986. Horowitz told her she would receive a 20% interest in the corporation, but she later discovered that she had only an 18.182% interest. Saleeby, Horowitz, and Senator Realty then mismanaged the property and eventually refinanced it without informing the plaintiffs.

1154 Realty Corp. purchased its property for less than the total of plaintiffs' investments in 1987. At an unspecified time Madeleine Behette invested $125,000 in 1154 Realty Corp., and Horowitz told her she would receive a 33.25% interest in it. In 1992 she discovered that she had been issued only a 25% interest.

Regarding 1154 Realty Corp. the complaint alleges a variety of management problems on information and belief. It also alleges, on information and belief, that Saleeby, Horowitz, and Senator acted as brokers for the prior owners of the property without disclosing that fact to plaintiffs.

Regarding 23 Prospect Ave. Realty Corp. the complaint switches to the first person and alleges "I [unspecified] believe that Corporate monies have been diverted" to Saleeby and Horowitz. The 23 Prospect Ave. property was "recently lost in foreclosure."

Defendant 1004 Realty Corp.'s property is also allegedly in foreclosure. The complaint alleges Saleeby and Horowitz mismanaged and failed to maintain the property.

In August 1989 Madeleine Behette invested $100,000 in Malsha Realty Corp. Saleeby and Horowitz told Madeleine Behette that she would receive a 25% interest in Malsha. She later discovered that she was issued a 20.7792% interest.

The complaint alleges little regarding defendants Vicsam Realty Corp. and 690 Realty Corp. except that Madeleine Behette invested in them (at an unspecified time in Vicsam and in April 1988 in 690 Realty) and that the tenant security deposits may not have been segregated appropriately.

Madeleine Behette invested in Horsal Realty Corp. in June 1988. She thought she would receive a 15% interest but later discovered that she had only a 9.354% interest.

The tenant security deposits for Horsal's property may also have been mishandled.

Finally, regarding Salor Realty, the complaint does not allege anything about investments. It simply alleges that its income should support its debt and that the tenant security deposits may not have been segregated appropriately.

## C. *Other allegations*

At unspecified times Saleeby and Horowitz took equity interests in at least seven of the defendant corporations, and the complaint purports to attach an exhibit "E" (actually included as exhibit "B" with the Order to Show Cause) showing that six of the plaintiffs received lower than expected percentage interests in the defendant corporations.

On May 10, 1989 Saleeby and Horowitz mailed letters to the plaintiffs stating that on the sale of the Horsal properties, "the investors receive their investment first, before the profits from said sale is distributed to all the stockholders." The complaint does not say how this is relevant, particularly since it does not allege that the Horsal properties were sold.

At unspecified times Saleeby and Horowitz allegedly created "illusionary and implausible expense bills" and sent plaintiffs requests for additional funds. On January 13, 1993 Saleeby and Horowitz sent plaintiffs letters requesting an "immediate infusion of cash" for six of the defendant corporations "to avoid *very very serious* consequences" (emphasis in original), and at an unspecified time they obtained a $100,000.00 loan from plaintiff Victor Samara.

## II

Saleeby, Horowitz, and Senator Realty moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) on the grounds that (a) the applicable statutes of limitation bar all of the federal claims and (b) plaintiffs do not plead RICO violations properly, most notably by failing to plead fraud with particularity. While a number of plaintiffs' claims appear to be dismissable for those reasons, the court finds that

Rule 8, providing for "short and plain" statements of claims, is applicable as well.

## A. *Securities Violations*

The eighth claim in the complaint alleges violations of section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2). That section subjects to civil liability anyone who "offers or sells a security ... by means of a prospectus or oral communication [that] includes an untrue statement of material fact...." The outside time limit for bringing an action under this section is three years from the date of sale of the security. 15 U.S.C. § 77m.

Plaintiffs filed the Order to Show Cause on July 20, 1993 and the complaint on July 26, 1993. The complaint does not state that defendants sold any securities on or after July 20, 1990, the latest possible date that a sale might not be time-barred. The eighth claim is therefore untimely.

The ninth claim in the complaint alleges a violation of Securities and Exchange Commissions Rule 146, regarding the registering of securities for public sale. Plaintiffs concede that that Rule has been rescinded. The ninth claim will be dismissed.

## B. *RICO*

■ The first claim in the complaint alleges violations of RICO, 18 U.S.C. § 1962(c) and (d). If the court has jurisdiction over this case, it will be based on RICO. At this point plaintiffs have not pleaded their RICO claims clearly enough for the court to determine whether they are tenable.

### 1. Rule 8 and the Elements of RICO

The RICO claim alone is nearly seventeen pages long, and it is replete with repetitive allegations and vague statements on information and belief. While the court construes the complaint in the light most favorable to the plaintiffs, the court will not act as plaintiffs' attorney and labor to unravel what claims which plaintiffs may have against which defendants.

In order to state a claim under RICO, plaintiffs must plead that each defendant violated section 1962. To do so they must allege: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce. 18 U.S.C. § 1962(a)–(c) (1976)." *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir. 1983) *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). But these elements must be pleaded in conformity with the Federal Rules of Civil Procedure.

Fed.R.Civ.P. 8(a) states, in pertinent part, "A pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(e) states, so far as relevant, "Each averment of a pleading shall be simple, concise, and direct."

Although RICO actions, particularly those based on predicate acts of fraud, may require plaintiffs to plead with more detail than otherwise would be required, Rule 8 does apply to such cases. *See United States v. Bonanno Organized Crime Family,* 683 F.Supp. 1411, 1428 (E.D.N.Y.1988), *aff'd on other grounds,* 879 F.2d 20 (2d Cir.1989). Plaintiffs should therefore draw a complaint that states specific facts showing the elements of a RICO claim, rather than writing a meandering history in loose affidavit form and then arguing that the RICO elements may be found buried somewhere in the quagmire.

Here the RICO claim is neither "short and concise" nor "simple and precise." It is pleaded almost exclusively from plaintiff Madeleine Behette's perspective and rambles through a variety of occurrences without precision as to what the RICO injuries are and when they occurred. A few of the problems with the complaint, which demonstrate why it fails to comport with Rule 8 or to give clear notice of the claims to defendants and the court, are as follows.

The complaint purports to reference several documents, found elsewhere in plaintiffs' papers, including a made-for-litigation listing of when each plaintiff invested in each defendant corporation, what percentage of the stock they were promised and what they received. The information in that chart, in

several important cases, contradicts the allegations of the complaint. For example, the complaint alleges that the 32 Snyder Realty Corp. property was sold in 1989, but exhibit "E" or "B" states that plaintiff Victor Samara invested in 32 Snyder Realty Corp. in 1990. This unexplained discrepancy in dates is important regarding whether a RICO claim by Mr. Samara regarding 32 Snyder Realty Corp. is time barred, as discussed below.

In other places the complaint gives no dates. The complaint states that defendants made "efforts to obtain loans from the individual stockholders," but it only gives one example, a series of January 13, 1993 letters from Saleeby and Horowitz to plaintiff Madeleine Behette, and never says if any plaintiffs relied on that letter. The complaint says that Mr. Samara loaned the defendant corporations $100,000, but it does not say when.

Furthermore, the complaint does not distinguish between predicate acts that are cognizable under RICO and those that are not. For example, breach of fiduciary duty should not be pleaded in a RICO claim as part of a pattern of racketeering acts because it is not specified "racketeering activity" under 18 U.S.C. § 1961. *See, e.g., Manion v. Freund,* 967 F.2d 1183, 1186 (8th Cir.1992).

The complaint does not provide enough information in its lengthy allegations to allow the court to know when, how, and why each of the nine plaintiffs invested in the eleven corporations. Rather than fashioning what may be claims of RICO injuries for each plaintiff as regards each corporation and then deciding the pending motions, the court will dismiss the RICO claims for failing to comply with Rule 8.

Plaintiffs may amend the complaint within 60 days from this Memorandum and Order. Any amended complaint will comply with Rule 8 by being concise. It will not include any plaintiffs or defendants regarding whom no relevant information appears in the complaint. Plaintiffs' attorney will comply with Rule 11 by signing the complaint. Finally, plaintiffs will pay particular attention to the elements of RICO, listed above, and the pleading issues discussed below.

## 2. Statute of Limitations

Most of the RICO claims appear barred by the RICO statute of limitations of four years from the time the action accrues. *See Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). Because plaintiff's complaint is unclear the court cannot now make a finding as to timeliness. Any amended complaint should pay particular attention to the accrual of any RICO actions.

■ In *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1102 (2d Cir.1988), *cert. denied sub nom., Soifer v. Bankers Trust Co.,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989), the Court of Appeals for the Second Circuit adopted a rule of "separate accrual" for RICO actions. "[E]ach time plaintiff discovers or should have discovered an injury caused by defendant's violation of § 1962, a new cause of action arises as to that injury, regardless of when the actual violation occurred." 859 F.2d at 1105. Once the cause of action accrues, a new four-year limitations period begins to run regardless of when the first act causing damage may have begun. *Cruden v. Bank of New York,* 957 F.2d 961, 977 (2d Cir.1992); *see also Bankers Trust co.,* 859 F.2d at 1104–05.

If plaintiffs' filing of the Order to Show Cause tolled the statute of limitations, an issue the court need not decide here, then plaintiffs may not recover damages for any RICO injury they discovered or should have discovered before July 20, 1989. Plaintiffs therefore must allege clearly what their RICO injuries are and when they discovered or were able to discover those injuries.

A RICO injury does not necessarily include every injury plaintiffs incurred as shareholders in the defendant corporations. Rather, the injury must be proximately caused by the predicate RICO acts. *Moeller v. Zaccaria,* 831 F.Supp. 1046, 1050 (S.D.N.Y.1993). Here, where the predicate acts appear to be mail and wire fraud, plaintiffs must show their RICO injuries resulted from those violations of the applicable statutory provisions. *Id.*

If plaintiffs have any cognizable RICO injury, it will most likely be the fact that they received less stock than promised on their initial investments in the defendant corporations, not any later losses resulting from defendants Saleeby and Horowitz's alleged conversion of corporate assets or mismanagement. Those injuries are not proximately caused by the RICO predicate acts and should not be pleaded in the RICO claim.

As noted above, the complaint does not state with any clarity when each plaintiff invested in each corporation and when they could have discovered that they had received smaller percentage holdings than they were promised. But the court will charge plaintiffs with knowledge of their percentage holdings as listed in the K–1 forms they received.

Defendants have provided the court with many of these K–1's. The court will consider K–1 forms on a motion to dismiss without converting to a motion for summary judgment, *see* Fed.R.Civ.P. 12, because these forms are required by the Internal Revenue Service, are equally accessible to plaintiffs, and plaintiffs were on notice of them when defendants introduced them and had a chance to respond to their introduction. *Cf. Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991), *cert. denied, Cortec Indus., Inc. v. Westinghouse Credit Corp.*, —— U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992) (plaintiff had notice of stock purchase agreements and other SEC-required documents introduced by defendant on motion to dismiss). Indeed, plaintiffs' only response to the K–1 forms is that plaintiffs are unsophisticated and cannot be expected to have read these forms. But the forms are one page long, and the relevant percentages of stock holdings are clearly indicated at the top of each form. Even if plaintiffs did not read and understand these forms, they should have.

Most of the investments occurred from 1986 to 1989, and plaintiffs must have known by the end of each of those years what percentage holdings they had in each corporation in order to file their tax returns in those years. Thus, plaintiffs should not include in an amended complaint injuries arising from any investments made prior to 1989.

### 3. Rule 9(b)

Finally, the amended complaint must state concisely any particular circumstances showing fraud.

The complaint asserts mail and wire fraud, 18 U.S.C. § 1341 & 1343, as the only cognizable "racketeering activity" underlying its RICO claim. Fed.R.Civ.P. 9(b) requires "the circumstances constituting fraud" to be pleaded with particularity. Rule 9(b) applies to RICO cases where the predicate acts are based on fraud. *Bonanno Organized Crime Family*, 683 F.Supp. at 1427. *See also Connors v. Lexington Ins. Co.*, 666 F.Supp. 434, 450 (E.D.N.Y.1987). The minimum requirements of Rule 9(b) are that "the time, place, and content of the alleged misrepresentations, as well as the speaker, must be identified." *Id.*

The complaint, despite its length, does not fulfill those requirements. Any amended complaint will include only the relevant predicate acts in the RICO claim and will provide in concise fashion the details required by Rule 9(b).

### III

The court dismisses claims eight and nine of the complaint with prejudice. The first claim is dismissed without prejudice. The court will not assess the state law claims until plaintiffs have established its jurisdiction over the case.

Within 60 days plaintiffs may file and serve an amended complaint plainly stating the bases for the relief they seek. Plaintiffs' request for relief in their Order to Show cause is denied. The court reserves the decision as to what sanctions, if any, it should impose on plaintiffs and their attorney.

So Ordered.