THE JORDAN (BERMUDA)
INVESTMENT COMPANY,
LTD., Plaintiff,

v.

HUNTER GREEN INVESTMENTS
LTD., et al., Defendants.

No. 00 Civ. 9214(RWS).

United States District Court,
S.D. New York.

July 19, 2001.

is organized and existing under the laws of Illinois. Its sole trustee, John W. Jordan II ("Jordan") is a resident and citizen of Illinois.

Butler, Fitzgerald & Potter, New York City, Raymond Fitzgerald, of counsel, for Plaintiff.

Rosenman & Colin, New York City, Joseph Zuckerman, Fred M. Santo, of counsel, for Defendants.

Skadden, Arps, Slate, Meagher & Flom, New York City, Seth Schwartz, Thomas F. Grizzetti, of counsel, for Defendants Investment Management Services, Inc., International Fund Services, Inc., International Fund Services (Ireland), European Fund Services Limited.

## OPINION

SWEET, District Judge.

Defendants Rosenman & Colin LLP, Fred M. Santo (collectively the "Rosenman defendants"), Investment Management Services, Inc., International Fund Services, Inc., European Fund Services Limited and Thomas F. Grizzetti (collectively the "IMS defendants") have moved to dismiss the complaint pursuant to Rules 9(b) and 12(b)(6), Fed.R.Civ.P. Plaintiff Jordan (Bermuda) Investment Company, Ltd. opposes. For the reasons set forth below, the motions will be granted.

### The Parties and Relevant Entities

Plaintiff the Jordan (Bermuda) Investment Company, Ltd. ("JBIC") is a corporation organized and existing under the laws of Bermuda, with its principal place of business in the State of Illinois. The sole shareholder of JBIC is The Jordan Trust, also known as the Jordan Charitable Remainder Trust ("the Jordan Trust"), which

The Beacon Emerging Debt Fund, Ltd. ("Beacon" or "the Fund") is a corporation organized under the laws of the British Virgin Islands and has been liquidated pursuant to winding up proceedings in the High Court of Justice in the British Virgin Islands ("B.V.I.").

Beacon Emerging Growth Fund LP ("Beacon Growth") is a limited partnership organized and existing under the laws of Delaware.

Defendant Hunter Green Investments Ltd. ("Hunter Green Ltd.") is a corporation organized and existing under the laws of the B.V.I. with a principal place of business in Connecticut. At all times relevant to this action, Hunter Green was the investment manager for Beacon and Beacon Growth.

Defendant Hunter Green Investments LLC ("Hunter Green LLC") is a limited liability company organized and existing under the laws of Connecticut, with a principal place of business in Connecticut. Hunter Green LLC was the Primary Sub-Advisor and Commodity Trading Advisor to Beacon at all times relevant to this action.

Defendant John Shilling ("Shilling"), a resident and citizen of Connecticut, was and remains a director of Hunter Green LLC.

Defendant Ilya Kaminsky ("Kaminsky") is a United States citizen[1] who was at all times relevant to this action a director and Chief Investment Officer of Hunter Green Ltd. and a director of Hunter Green LLC.

---

1. The complaint does not allege Kaminsky's state of residence.

Defendant Jonathan Vinnik ("Vinnik") is a United States citizen[2] who was at all times relevant to this action a director of both Hunter Green Ltd. and Hunter Green LLC.

Defendant International Fund Services (Ireland) ("IFSI"), a corporation organized and existing under the laws of the B.V.I., was the Administrator of Beacon in 1998.

Defendant Investment Management Services Inc. ("IMS"), a corporation organized and existing under the laws of Delaware, has its principal place of business in New York City. IMS was the effective administrator of Beacon during 1998.

Defendant International Fund Services Inc. ("IFS") is a corporation organized and existing under the laws of the State of Connecticut, with a principal place of business in New York.

Defendant Thomas F. Grizzetti ("Grizzetti") was a director of IMS, IFS and IFSI during 1998.

Defendants Mark William Solly ("Solly"), William James Cowell ("Cowell"), and European Fund Services Limited ("EFS") were directors of Beacon during 1998.

Defendant Susan Byrne ("Byrne") was a director of IFSI and IFS during 1998.

Defendant Rosenman & Colin LLP ("Rosenman") is a limited liability partnership engaged in the practice of law in New York City. At all times relevant to this action, Rosenman was legal counsel to Beacon, Beacon Growth, Hunter Green Ltd., Hunter Green LLC, IFSI, IMS, and IFS.

Defendant Fred M. Santo ("Santo"), a New York resident, is an attorney who represented Beacon on behalf of Rosenman during all times relevant to this action.

## Background

All of the facts alleged in the complaint are deemed true for the purposes of this motion to dismiss. The Trust is a tax-exempt charitable remainder unitrust. If the Trust used leverage (*i.e.* borrowed money) to make investments, it would risk accruing unrelated business taxable income.

Beacon was a corporation organized to achieve a high return on interest income by investing in emerging markets. Its confidential Private Placement Memorandum ("PPM"), which offered Class A shares, warned that Beacon utilized a high-risk investment strategy employing leverage. Beacon borrowed funds from securities brokers and others and used Beacon's securities or other assets as security for its leveraged investments.

While notifying potential investors that "[t]he Fund is also authorized to issue, and has issued, other classes of shares which have different investment objectives and have been offered on different terms and conditions than the Shares" (PPM at 9), the PPM specified that:

> no offering literature or advertising in any form whatsoever shall be employed in the offering of the shares except for this memorandum[;] no person has been authorized to make any representation or provide any information with respect to the shares except with such information as is contained in this memorandum and, if given or made, such representations or information may not be relied upon as having been authorized by the Fund or its directors.

(PPM at i.)

In early 1998, Jordan and Shilling had a telephone conversation to explore the possibility of the Trust investing in Beacon. During that discussion, Jordan stated that

---

**2.** The complaint does not allege Vinnik's state of residence.

the Trust's monies could not and would not be used to make investments utilizing leverage. In various written communications—including letters from Shilling to JBIC dated (1) March 18, 1998; (2) March 19, 1998; and (3) March 23, 1998; and (4) drafts, blacklined, and clean versions of both an Investment Control Side Letter ("Investment Control Letter") and Class J Supplement to Beacon's PPM—Shilling represented that Beacon would issue to the JBIC a special Class J of Shares which would not utilize leverage as a part of their investment strategy, and that any investment decisions would be made with Jordan's prior consultation and approval.

Rosenman and Santo prepared or reviewed and approved the draft text and final versions of the Class J Supplement and Investment Control letter. On March 24, 1998, Shilling delivered blacklined and clean versions of those documents to the Trust's attorney and delivered an executed copy of the Investment Control Letter to the Trust. The Class J Supplement announced that Beacon had the right to issue Class J shares and that those shares would have rights equal to Class A shares, but that "[u]nlike the Class A Shares described in the [PPM], which utilize leverage as part of the investment strategy, Class J shares will invest on an unlevered basis." (Compl. ¶ 86 (quoting Class J Supplement.))

The Trust executed and returned the Beacon Subscription Agreement and other documents on March 30–31, 1998, and bank-wired $5 million ("the Trust monies") to New York to be credited to Beacon's account. The Subscription Agreement specified that JBIC would buy Class J "subject to the terms and conditions set forth in this Subscription Agreement ... and in the Private Placement Memorandum dated October 1, 1997, as supplemented through the date hereof, and the exhibits thereto including but not limited to the Class J Supplement (collectively, the 'Memorandum')." (IMS Mtn. Ex. 3 at 1.) By signing the Subscription Agreement, JBIC agreed that "[i]n deciding to invest in the Fund, Subscriber has relied solely upon the information in the Memorandum. Specifically, the Subscriber has not relied on oral representation or warranties, if any have been made." (Id. at 6.)

Beacon sent JBIC account statements for the months of April and May of 1998, both of which reflected JBIC's ownership of Class J shares. Shilling and Jordan discussed the Class J shares in August of 1998, and Rosenman faxed JBIC a financial statement reflecting its ownership of Class J shares on October 5, 1998.

Four creditor banks filed a Winding Up Petition to liquidate Beacon on October 20, 1998, in the High Court of Justice in the British Virgin Islands.

The complaint alleges that Beacon was not authorized to issue Class J shares, that in fact Class J shares did not exist, had no rights, and could not be issued; that the Trust Monies could not be, and were in fact not invested in a non-leveraged basis as per Jordan's prohibitions; that Beacon failed to consult with Jordan or obtain his approval before making any investment decisions pertaining to the Class J shares' portfolio; that the Trust's Monies were subject to claims and liens of Beacon's creditors; that between April 7, 1998 and May 13, 1998, Beacon repeatedly utilized leverage to invest the Trust Monies in foreign currency investments; and that the defendants intentionally failed to disclose, and even concealed, these facts.

Moreover, the complaint alleges that the defendants continued to conceal their misappropriation of plaintiff's funds after liquidation and into the year 2000 by making misleading or outright false representations to the B.V.I. High Court-appointed

Liquidator pertaining to the allocation of funds from JBIC's Beacon account.

Specifically, the complaint sets forth nineteen counts, alleging against "all defendants" (1) two counts of violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(b); (2) two RICO counts for violations of § 1962(c); (3) three RICO conspiracy counts for violating § 1962(d); (4) four common law fraud claims, including concerted action, conspiracy, and aiding and abetting; (5) negligent misrepresentation and omission; (6) four counts of breach of fiduciary duty, including concerted action, conspiracy and aiding and abetting; (7) negligence; and (8) conversion.

The Rosenman defendants filed a motion to dismiss on February 6, 2001, and IMS defendants filed a motion to dismiss nine days later. JBIC opposed the motions, which were deemed fully submitted after oral argument on April 18, 2001.

## *Discussion*

### I. *Legal Standard for Failure to State a Claim*

In reviewing a motion to dismiss under Rule 12(b)(6), review must be limited to the complaint and documents attached or incorporated by reference thereto. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir.1991). Courts must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993) (*citing IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir. 1993)). Dismissal is warranted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). *See also Bass v. Jackson*, 790 F.2d 260, 262 (2d Cir.1986).

■ "For purposes of a motion to dismiss, [the Second Circuit has] deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference ..., as well as public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.2000) (*citing Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989); *Kramer*, 937 F.2d at 774; and *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992)). Although "limited quotation does not constitute incorporation by reference," *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989) (*quoting Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir.1985)), the "line between incorporating by reference and not doing so ... is fine," *Kas v. Chase Manhattan Bank, N.A.*, No. 90 CIV. 44(KMW), 1990 WL 113185, *4 (S.D.N.Y. July 30, 1990). In addition, courts may take judicial notice of additional facts meeting the test set forth in Federal Rule of Evidence 201. *Kramer*, 937 F.2d at 774.

■ While a court may transform a 12(b)(6) motion into a summary judgment motion pursuant to Rule 56(c) if the parties submit evidence beyond the pleadings, such action is inappropriate unless the parties are given notice and an opportunity to respond appropriately. Fed.R.Civ.P. 12(b) ("If, on a [12(b)(6) motion], ..., matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment ... and all parties shall be given reasonable opportunity to present all material

made pertinent to such a motion by Rule 56."); *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir.2000). Even where additional materials are submitted by one party, a trial court should not transform a 12(b)(6) motion into a summary judgment motion where, as here, the motion has been filed in lieu of an answer, and the parties have neither completed discovery nor formally requested that the motion be converted. *See 2 Broadway L.L.C. v. Credit Suisse First Boston Mortg. Capital L.L.C.*, No. 00 Civ. 5773 GEL, 2001 WL 410074, *5 & n. 3 (S.D.N.Y. Apr. 23, 2001).

In any case, a court need not convert a 12(b)(6) motion into a summary judgment motion to consider additional materials "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint." *Cortec*, 949 F.2d at 47–8. *See also Envirosource, Inc. v. Horsehead Resource Dev. Co., Inc.*, No. 95 CIV. 5106(AGS) 1996 WL 363091 at *5 (S.D.N.Y. July 1, 1996) ("In ruling on a Rule 12(b)(6) motion, the Court may properly take notice of documents outside the four corners of the complaint where, as here, the plaintiff has actual notice of the documents and has relied upon them in framing the complaint.").

■ Here, the Rosenman defendants have offered the PPM (Rosenman Mtn. Ex. 3), the Class J Supplement (*Id.* Ex. 2), and February 3, 2000 judgment of the B.V.I. High Court of Justice (*Id.* Ex. 4), and the IMS defendants have offered the PPM (IMS Mtn. Ex. 2) and Subscription Agreement executed on March 30, 1998 (*Id.* Ex. 3), as evidence in support of their motions to dismiss. The PPM may be considered because JBIC quotes it at length and refers to it repeatedly in the complaint. (Compl.¶¶ 41, 45, 48, 51, 69, 70, 71.) The Class J Supplement, too, is properly considered here on the same grounds.

(Compl.¶¶ 73, 77, 78, 80, 85, 86, 88(e), (g), 89(e), (g), 90.) As JBIC signed the Subscription Agreement and relied on it to draft the complaint (Compl.¶¶ 88), that document is also appropriately considered here.

■ Finally, the judgment of the B.V.I. court has been offered in connection with defendants' collateral estoppel argument. As the judgment is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," Fed.R.Evid. 201(b)(2), the Court may take judicial notice of it and consider it in deciding the motion. *See Conopco, Inc., v. Roll Int'l*, 231 F.3d 82, 86–87 (2d Cir.2000) ("Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate when a defendant raises claim preclusion . . . as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."); *Thompson v. County of Franklin*, 15 F.3d 245, 253 (2d Cir.1994) (same); *Sprague & Rhodes Commodity Corp. v. Instituto Mexicano Del Cafe*, 566 F.2d 861, 862 (2d Cir.1977) (noting that Rule 201 permits a court to take judicial notice of a foreign judgment).

■ However, the evidence JBIC has offered goes beyond these limited parameters and will not be considered. First, JBIC has provided certain documents to "set forth the facts that put into proper context the February 3, 2000 judgment of the High Court" will not be considered. These documents are attached to an affidavit by Raymond Fitzgerald, counsel to JBIC, and include, *inter alia*, legal opinions of Beacon's Liquidator and Beacon's Articles of Association. (*See* Fitzgerald Aff. Exs.) In *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (1991), the Second Circuit noted that "courts routinely take judicial notice of documents filed in [other

actions], ... not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." However, the *Kramer* Court "stress[ed] that [its] holding relates to public disclosure documents required by law to be filed, and actually filed, with the SEC ...," 937 F.2d at 774, and therefore does not support JBIC's attempt to introduce evidence or legal arguments presented to the B.V.I. court in the prior related action.

At oral argument on April 18, 2001, and again by "Notice of Lodgment," counsel for JBIC submitted four "exhibits:" (1) a June 11, 1998 fax from Shilling to nonparty John Burns ("Burns") of Baldwin Enterprises, Inc. "Baldwin Enterprises" attaching a "Class H Supplement" to the PPM; (2) a July 21, 1998 letter from IFSI employee Susan Byrne to Baldwin Enterprises enclosing a Beacon account statement reflecting ownership of Series H shares; (3) a Beacon account statement for Baldwin Enterprises for August 1998; and (4) a July 10, 1997 letter from Byrne to Burns acknowledging receipt of $5 million for a subscription of Series 9 shares in Beacon. (Notice of Lodgment Exs. 1–4.) None of these documents was referenced in the complaint or pertains to the collateral estoppel argument. In fact, they do not relate at all to JBIC's claimed injury, but instead purport to document other examples of the defendants' alleged racketeering activity. As the parties have not moved the Court to convert this motion to dismiss into one for summary judgment, neither these documents, nor those submitted by the IMS defendants in rebuttal on April 24, 2001, will be considered here.

By definition, a 12(b)(6) motion is addressed only to the sufficiency of the pleadings and documents attached or incorporated thereto, and the Court's review will be limited accordingly.

## II. *The RICO Counts Will be Dismissed Against the IMS and Rosenman Defendants*

### A. *The Complaint Fails to State a Claim for Civil RICO Violations*

#### 1. *§ 1962(b) and (c)*

[redacted] To state a RICO claim under § 1962(b) and (c), a plaintiff must plead seven elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983) (quoting 18 U.S.C. §§ 1962(a)—(c)); *see Scheiner v. Wallace,* 832 F.Supp. 687, 699 (S.D.N.Y.1993). "In considering RICO claims, courts must attempt to achieve results 'consistent with Congress's goal of protecting legitimate businesses from infiltration by organized crime." ' *Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, 346 (S.D.N.Y.1998).

##### a. *Predicate Acts of Racketeering*

[redacted] The RICO statute defines "racketeering activity" as comprising enumerated crimes, including mail fraud and wire fraud as alleged in this case. 18 U.S.C. § 1961(1)(B); *see also* 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud). Unenumerated acts such as common law fraud, negligent misrepresentation, breach of fiduciary duty, negligence, and conversion, are not "racketeering activities." *See, e.g., Shams v. Fisher,* 107 F.Supp.2d 266, 273 (S.D.N.Y.2000) ("common law fraud and conversion [ ... ] are not acts of racketeering activity under RICO."); *Behette v. Saleeby,* 842 F.Supp. 657, 661 (S.D.N.Y. 1994) (breach of fiduciary duty not "racke-

teering activity" under 18 U.S.C. § 1961); *Jenkins v. Sea–Land Service, Inc.*, No. 92 Civ. 2380(PKL), 1993 WL 33406, *5 (S.D.N.Y. Feb. 4, 1993) (none of the acts alleged—fraud, conversion, conspiracy, and coercion—was racketeering activity pursuant to § 1961(1)).

A plaintiff alleging mail or wire fraud must plead that the defendants engaged in "(i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires." *U.S. v. Autuori*, 212 F.3d 105, 115 (2d Cir.2000). In addition, a complaint alleging mail or wire fraud must allege both that the defendant acted with scienter (*i.e.* knowingly participated in the scheme), and that the misrepresentations were material. *Id.;* see also *S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir.1996). Although mail or wire communications that do not contain false information may satisfy the transmission element of the offenses, the mail or wire communications must be "incident to an essential part of the scheme" which itself has a fraudulent or deceptive purpose. *Schmuck v. United States*, 489 U.S. 705, 712, 715, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989).

The complaint in this action alleges that the defendants' racketeering activities "involved at least four schemes to defraud the Jordan Trust," including (1) "inducing The Jordan Trust to deliver Five Million ($5,000,000) Dollars to Beacon under false pretenses;" (2) "misrepresenting the existence of the Class J Shares, subjecting The Jordan Trust's monies to the claims and liens of Beacon's creditors and the making, and concealing from The Jordan Trust, of prohibited investments with The

Jordan Trust's monies;" (3) "misappropriating, and converting, $472,945 from Beacon;" and (4) "misappropriating, and converting, participatory interests in Russian Government or Governmental currency instruments purchased by Beacon for $751,384." (Compl.¶ 124(a)-(d).) [3]

However, although pled as four different schemes, the acts alleged in fact constitute only a single fraudulent scheme against the plaintiffs. The misrepresentation of Class J shares alleged in the "second scheme" was the means by which the defendants fraudulently induced the plaintiff to transfer the $5 million in the "first scheme," not a separate scheme with a distinct purpose. The third and fourth schemes involve transfers of funds totaling $1 million from Beacon to Beacon Growth, which allegedly caused the plaintiff damages. (Compl.¶ 127–29.) However, both the complaint and plaintiff's brief contend that these transfers were part and parcel of the primary scheme to defraud JBIC by fraudulently inducing it to invest $5 million and then using those funds in an unauthorized manner. (Compl. ¶¶ 98–100; Pltf. Br. at 17 (noting that these provisions allege "unauthorized transfers of funds from the Trust's account into foreign currency investments.").)

Because JBIC alleges mail fraud and wire fraud as the predicate acts, the complaint must comport with Fed.R.Civ.P. 9(b), which requires plaintiffs to plead the circumstances of the fraud with particularity. In other words, the Complaint:

> must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which [plaintiff] contend[s] the statements were fraudulent, state when and where

3. Plaintiff's brief in opposition to the motions to dismiss consolidates the latter two "schemes" into a single scheme in which defendants allegedly "misappropriated, and converted through two different schemes, over $1,000,000 of Beacon's assets to the detriment of Beacon, its shareholders and creditors, including the Trust." (Pltf. Br. at 2.)

the statements were made, and identify those responsible for the statements.

*McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992) (*citing Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989)); *see also Roso v. Saxon Energy Corp.,* 758 F.Supp. 164, 170 (S.D.N.Y.1991) (noting that a "simple scheme to defraud" is not actionable under RICO). "All of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions." *Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F.Supp. 276, 281 (S.D.N.Y.1991) (citation and internal quotations omitted).

■ Given the difficulty in pleading a defendant's state of mind with specificity, Rule 9(b) requires that a plaintiff plead the intent element of fraud only in general terms. *See Powers v. British Vita, P.L.C.,* 57 F.3d 176, 184 (2d Cir.1995). This standard may be satisfied by pleading either that the defendants engaged in consciously fraudulent behavior, or that they had both the motive and a "clear opportunity" to commit fraud. *Id.*

■ Finally, where, as here, more than one defendant is charged with fraud, the complaint must particularize each defendant's alleged participation in the fraud. *See Di Vittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987) ("where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."); *Daly v. Castro Llanes,* 30 F.Supp.2d 407, 414 (S.D.N.Y. 1998). In the context of a RICO claim, each defendant must be alleged to have engaged in two or more predicate acts. *See Lakonia Management Ltd. v. Meriwether,* 106 F.Supp.2d 540, 550 (S.D.N.Y. 2000) (RICO complaint must allege that each defendant committed at least two predicate acts of racketeering); *Moeller v.*

*Zaccaria,* 831 F.Supp. 1046, 1056 (S.D.N.Y.1993) (same).

■ The complaint alleges numerous predicate acts in furtherance of the scheme to defraud, both before and after liquidation. (Compl.¶¶ 65, 66, 69–74, 77–82, 85–87, 99–115, 125–128.) Briefly, the pre-liquidation acts alleged include verbal representations by Shilling in telephone conversations with Jordan in early 1998; letters from Shilling to Jordan dated March 18, 1998 and March 19, 1998; Shilling's March 23 and 24, 1998 letters to plaintiff's attorney; and draft versions of Class J Supplement (dated March 24, 1998) and Investment Control Letter (dated March 23, 1998); cover letters enclosing account statements dated May 14, 1998 and June 9, 1998; a telephone conversation between Jordan and Shilling in August of 1998; and various communications "between and/or among" the defendants from March 1998 through at least May 28, 1998.

Plaintiff contends that it need not plead each predicate act with particularity to comply with Rule 9(b) where the acts alleged are not themselves fraudulent, but merely further the scheme to defraud. *See In re Sumitomo Copper Litigation,* 995 F.Supp. 451, 456 (S.D.N.Y.1998) (*citing Spira v. Nick,* 876 F.Supp. 553, 559 (S.D.N.Y.1995)). However, because the complaint alleges that each of the pre-liquidation acts alleged "were false and deceptive" (Compl.¶ 90), *Spira* does not apply, Rule 9(b) requires them to be pled with particularity. *See Lakonia Management Ltd. v. Meriwether,* 106 F.Supp.2d 540, 556 (S.D.N.Y.2000). In any case, the complaint does set forth the "who, ... where and when" of the pre-liquidation predicate acts in compliance with Rule 9(b). *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir.1993).

With regard to post-liquidation predicate acts, the complaint alleges, with varying degrees of specificity, that: defendants communicated among and/or between themselves by mail prior to misappropriating over $1 million in funds from plaintiff's Beacon account (Compl.¶¶ 127(a), 128(a).); Shilling made repeated false representations to Andrew D. Bickerton, ("the Liquidator"), including a conversation on November 20, 1998, a letter on December 7, 1998, and telephone conversations on January 4, 1999, January 4, 2000, and February 3, 2000 (Compl.¶¶ 127(b)-(f)); Grizzetti sent letters to Mr. Carter and James Hayword of Chase Manhattan Bank on November 16, 1998 and November 17, 1998 (Compl.¶ 128(b)-(d)); and Byrne sent a letter to the Liquidator on November 20, 1998 (Compl.¶ 128(e)).

A § 1962(c) claim may not be asserted against professionals such as the Rosenman defendants unless the complaint contains adequate factual allegations that the professional "operated or managed" the enterprise, participated in its "operation" or "management," or played "some part in directing the enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 & n. 4, 185–86, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). As the complaint fails to allege that the Rosenman defendants "managed" or "conducted" the affairs of Beacon, the § 1962(c) claims against them in Counts V and VII must be dismissed. *See Reves*, 507 U.S. at 185–86, 113 S.Ct. 1163; *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521–22 (2d Cir.1994); *Morin v. Trupin*, 832 F.Supp. 93, 98 (S.D.N.Y.1993) (dismissing § 1962(c) claim against attorney and law firm that provided tax information in organization's PPM and represented company in IRS proceedings).

The § 1962(b) claims against the Rosenman defendants in Counts I and III must also be dismissed, because the complaint fails to allege that they "directly or indirectly invest[ed] in, or maintain[ed] an interest in, or participate[d] in" Beacon. *Citadel Management Inc. v. Telesis Trust Inc.*, 123 F.Supp.2d 133, 154 (S.D.N.Y. 2000) (citations omitted); *see also Morin*, 832 F.Supp. at 99 (dismissing § 1962(b) count against law firm that represented real estate partnership but had no economic investment in it).

The predicate acts alleged to have been committed by the IFS defendants include the post-liquidation account statements signed by Byrne (Compl.¶¶ 105, 108), statements by Grizzetti to the Liquidator on November 20, 1998 (Compl.¶ 127(b)), letters from Grizzetti and Byrne to the Liquidator and Chase Manhattan Bank in November 1998 (Compl.¶ 128(b)-(e)), and unspecified "communications between and/or among" the other defendants from April 1, 1998 through May 28, 1998 (Compl.¶ 126(a)), prior to August 17, 1998 (Compl.¶ 127(a)), and prior to May 6, 1998 (Compl.¶ 128(a)). With the exception of the "between and/or among" communications, these allegations are sufficiently particular to satisfy Rule 9(b).

### b. *Pattern of Racketeering Activity*

In addition to alleging the predicate acts, JBIC must also establish a pattern by showing that the defendants' acts are "related, and that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The continuity necessary to establish a pattern may be either "closed-ended" or "open-ended."

### i. *Closed–Ended Continuity*

Closed-ended continuity involves acts occurring over a "substantial" amount of time, which the Supreme Court

has defined as including periods of more than a few months. *See id.*, 492 U.S. at 242, 109 S.Ct. 2893. The Second Circuit has never found that activity continuing for less than two years is substantial under this rule. *See Cofacredit*, 187 F.3d at 242. Here, JBIC contends that the defendants' alleged racketeering acts took place "over a substantial period of time, in excess of two years, from at least as early as the second quarter of 1998 and continuing through the present." (Compl.¶ 122.) Taking the most expansive view of the alleged racketeering activity, the scheme lasted approximately 22 months, from March 18, 1998 until the last enumerated contact with the Liquidator on February 3, 2000.

The duration of a scheme is not dispositive. *See Pier Connection Inc. v. Lakhani*, 907 F.Supp. 72, 78 (S.D.N.Y.1995) In determining whether closed-ended continuity exists, courts have considered other factors, including "the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes." *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 467–68 (2d Cir.1995). As this alleged scheme existed with a single purpose directed at a single victim and was accomplished by the straightforward use of oral and written communications pertaining to Class J shares, this period of less than two years does not constitute closed-ended continuity. *See Casio Computer Co., Ltd. v. Sayo*, No. 98CV3772 (WK), 2000 WL 1877516, *12 (S.D.N.Y. Oct. 13, 2000) (finding that single purpose/single victim scheme lasting sixteen months until being discovered did not confer closed-ended continuity); *Qualis Care, L.P. v. Hall*, No. 95 Civ. 4955, 1999 WL 683563, *6, *7 (S.D.N.Y. Sept. 1, 1999) (19 months insufficient); *Niles v. Palmer*, No. 97 Civ. 7573, 1999 WL 1419042, *7 (S.D.N.Y. Oct. 22, 1999) (21 months insufficient).

#### ii. *Open–Ended Continuity*

Open-ended continuity, on the other hand, does not require a substantial temporal showing, but requires a plaintiff to show a threat of ongoing criminal activity beyond the period in which the predicate acts were committed. *See Cofacredit*, 187 F.3d at 242. That the complainant has not recovered a contractual loss, for example, is insufficient to prove the threat of future criminal acts by the defendants. *Cf. Perlman v. Zell*, 185 F.3d 850, 853 (7th Cir.1999) ("breach of contract is not fraud, and a series of broken promises therefore is not a pattern of fraud. It is correspondingly difficult to recast a dispute about broken promises into a claim of racketeering under RICO.")

The complaint in this action alleges, in essence, that the defendants engaged in a scheme to defraud the plaintiff of $5 million by inducing it to invest in nonexistent Class J shares of Beacon, making unauthorized use of the funds once invested, and then failing to compensate the plaintiff fully upon liquidation. Although JBIC alleges that the defendants' misappropriation of its funds is "continuing to this day" (Pltf. Br. at 8), such a scenario does not present the threat of future repetition so as to warrant a finding of open-ended continuity—particularly in light of the liquidation. *See, e.g., GICC Capital*, 67 F.3d at 466 (no threat of open-ended continuity when scheme to loot corporation had already depleted all funds); *Qualis Care*, No. 95 Civ. 4955, 1999 WL 683563, at *6 (S.D.N.Y.Sept.1, 1999) ("When a plaintiff cannot allege the scheme at issue is a regular aspect of defendants' business, or that there is a likelihood of repetition of the alleged predicate acts, plaintiff has

failed to establish open-ended continuity."); *Mabon, Nugent & Co. v. Borey,* 127 B.R. 727, 743 (S.D.N.Y.1991) ("it is difficult to discern open-ended continuity, since both [defendants] are in Chapter 7 bankruptcy liquidation, and there is no allegation that any defendants are engaged in ongoing, comparable fraudulent activity.").

The substantive RICO claims alleged in Counts I, III, V and VII will therefore be dismissed for lack of continuity.

### 2. *Racketeering Conspiracy Under § 1962(d)*

■■■ In order to establish a violation of § 1962(d), the Supreme Court has held that a "conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense...." *Salinas v. United States,* 522 U.S. 52, 65, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997); *see also Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 244–45 (2d Cir.1999). In other words, a RICO conspiracy claim cannot stand where the elements of the substantive RICO provisions are not met. *See Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1062–63 (2d Cir.1996).

As part of this alleged conspiracy, plaintiffs must necessarily allege that the defendants agreed to commit at least two predicate acts in furtherance of a pattern of racketeering activity, and that these agreed-upon acts, if carried out, would have formed a "pattern of racketeering activity." *Cofacredit,* 187 F.3d at 244–45. To withstand a motion to dismiss, a RICO conspiracy allegation must "display[ ] the continuity necessary to support a substantive RICO violation," or an agreement to perform other predicate acts that, if carried out, would have established the requisite "pattern of racketeering activity." *Id.* at 245. As set forth above, the complaint fails to allege facts on which to find a pattern of racketeering activity.

Therefore, the § 1962(d) RICO conspiracy claims in Counts II, IV, VI and VIII are also dismissed.

### III. *The Remaining State Law Claims Are Dismissed for Lack of Jurisdiction*

Since the RICO counts have been dismissed, no federal question provides jurisdiction over this action. Title 28 U.S.C. § 1367(c)(3) gives the Court discretion to "decline to exercise supplemental jurisdiction over a claim ... if ... (3) the district court has dismissed all claims over which it has original jurisdiction." As the Supreme Court noted in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), whether to retain jurisdiction over pendent state law claims is within a trial court's discretion, "not [a matter of] plaintiff's right." 383 U.S. at 726, 86 S.Ct. 1130, 16 L.Ed.2d 218. *See also Carnegie Mellon University v. Cohill,* 484 U.S. 343, 357 & n. 7, 108 S.Ct. 614, 622 & n. 7, 98 L.Ed.2d 720 (1988) (recognizing nonmandatory rule that where all federal claims are dismissed, district court should dismiss all state claims as well). The *Gibbs* Court directed that:

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Id.* (citations and footnotes omitted); *see also Grace v. Rosenstock,* 228 F.3d 40, 55 (2d Cir.2000) (discussing policy reasons for dismissing pendent state law claims after federal claim has been dismissed). Accordingly, with these interests in mind, the

remaining state law claims will be dismissed.

### Conclusion

For the foregoing reasons, the motions to dismiss are granted, and plaintiffs are granted leave to replead.

It is so ordered.