Stanley **MARKOWITZ**, Plaintiff,

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,** Amin Soorty and Richard G. Freeburg, Defendants.

**No. 82 Civ. 5735(MEL).**

United States District Court,
S.D. New York.

Jan. 24, 1984.

Kraver & Martin, New York City, for plaintiff; Richard M. Kraver, Lewis S. Fischbein, New York City, of counsel.

William T. Marshall, Jr., Jeffrey T. Letzler, New York City, for defendants.

LASKER, District Judge.

This case concerns application of the antifraud provisions of the Commodity Exchange Act ("CEA"). Defendants have developed alternative theories of relief in support of their motions to dismiss and for summary judgment pursuant to Rules 12(b) and 56 of the Federal Rules of Civil Procedure. Plaintiff has brought a Rule 56 cross-motion for summary judgment based upon the doctrine of collateral estoppel. For the reasons described below, the complaint is dismissed without prejudice because it fails to state a claim under the CEA.

I.

On the morning of August 31, 1979, plaintiff, who held a commodities trading account with Merrill Lynch, gave defendant Soorty, at the time a Merrill Lynch account executive, an order to buy a number of silver futures contracts for him. It was established at the state trial involving related issues that Soorty made an error when he sold instead of bought silver futures contracts for plaintiff,[1] and that this

---

1. *See* Hearing Transcript at 3–4, *Markowitz v. Merrill Lynch, Pierce, Fenner & Smith*, No. 4422/80 (N.Y.Sup.Ct. filed Mar. 26, 1981), *re-*

error produced a deficit in plaintiff's trading account. With respect to transactions made by Soorty later on the same day which increased the size of plaintiff's loss, the state jury decided that the losses were the result of plaintiff's own doing.[2]

On September 4, 1981, the next business day following the Labor Day weekend, plaintiff went to defendants' offices to demand, in light of Soorty's error, that defendants reverse the August 31 transactions. Defendants refused, stating that they considered the resulting loss as being entirely plaintiff's responsibility, that the loss had to be borne solely by plaintiff, and that defendants intended to collect the unsecured debt created by this loss as soon as possible. By September 5, Soorty had prepared an inter-office memorandum describing his version of the events of August 31. On the same day, plaintiff's objections notwithstanding, defendants liquidated plaintiff's account. It is alleged that defendants relied upon the Soorty memorandum as a justification for their action even though they knew, or should have known, that the contents of the memorandum were false.

As indicated above, in November 1979, plaintiff filed a complaint in New York State Supreme Court which contained four common law counts, among them negligence and breach of fiduciary duty, based upon the disputed transactions of August 31.[3] The trial court held defendants liable for the first transaction of August 31.

Plaintiff then brought this action against defendants for the wrongful liquidation of his account. The four-count complaint charges defendants with violating Sections 4b and 4o of the CEA[4] (count 1), wrongful conversion of plaintiff's commodities account (count 2), negligent liquidation of plaintiff's commodities and stocks (count 3), and breach of fiduciary duty (count 4). Jurisdiction is based upon the existence of a federal question[5] and the doctrine of pendent jurisdiction.[6]

Defendants move to dismiss the complaint or for summary judgment arguing that *res judicata* and the applicable statute of limitations prevent plaintiff from bringing this proceeding, and that there is no jurisdictional basis for this suit because plaintiff has failed to allege a cause of action under the Commodities Exchange Act. Plaintiff cross-moves for partial summary judgment arguing that the findings of the state court are entitled to preclusive effect here. The complaint is dismissed without prejudice because plaintiff has failed to allege a cause of action under Sections 4b or 4o of the CEA.

## II.

### A. The CEA Section 4o Claim

Defendants argue that the CEA Section 4o claim should be dismissed because it is an antifraud provision aimed at the "commodity trading advisor" or "commodity pool operator", the complaint does not allege that Merrill Lynch was a "commodity pool operator," and the complaint insufficiently alleges that Merrill Lynch is a "commodity trading advisor" as defined by the Commodities Future Trading Commission ("CFTC"). Plaintiff asserts that whether Merrill Lynch is a "commodity

---

*printed in,* Plaintiff's Notice of Cross-Motion at Exhibit G.

**2.** *See id.*

**3.** *See* Verified Complaint, *Markowitz v. Merrill Lynch, Pierce, Fenner & Smith,* No. 4422/80 (N.Y.Sup.Ct. dated Nov. 6, 1979), *reprinted in,* Defendants' Notice of Motion at Exhibit A.

After a jury had been picked but just before the start of the trial, plaintiff moved to add a fifth cause of action for "lost earnings arising out of the wrongful liquidation" of plaintiff's account. The trial court denied this motion given its

lateness. *See* Hearing Transcript at A4–A5, *reprinted in,* Defendants' Notice of Motion at Exhibit D. While the parties have provided extensive submissions on the preclusive effect of this finding, we need not resolve this question in the light of our dismissal of this complaint for the reasons discussed below.

**4.** 7 U.S.C. §§ 6b & 6o.

**5.** *See* 28 U.S.C. § 1331.

**6.** *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

trading advisor" depends upon a question of fact which is not determinable on a motion to dismiss.

Section 4o of the CEA makes it unlawful for any "commodity trading advisor" or "commodity pool operator" to defraud any client.[7] Since plaintiff has not alleged Merrill Lynch is a "commodity pool operator," the question to be resolved is whether the complaint sufficiently alleges that Merrill Lynch is a "commodity trading advisor."

According to the CFTC, a "commodity trading advisor" is

"any person who, for compensation or profit, engages in the business of advising others, ... as to the value of commodities or as to the advisability of trading in any commodity for future delivery ... but does not include ... (iii) any floor broker or futures commission merchant, .... Provided, That the furnishings of such services by the foregoing persons is solely incidental to the conduct of their business or profession." [8]

■ Review of the complaint and plaintiff's affidavits reveal that Merrill Lynch is alleged to be a "futures commission merchant." [9] In addition, while no authority is cited by defendants, we find their argument persuasive that there exist no allegations that defendants provided plaintiff with advice, or that such advice was more than "incidental to the conduct" of Merrill Lynch's business. The CEA Section 4o claim is therefore dismissed without prejudice.

### B. *The CEA Section 4b Claim.*

1. Defendants' motion to dismiss plaintiff's CEA Section 4b claim presents a closer question. Plaintiff alleges that "[o]n or about September 5, 1979, defendants cheated or defrauded, or attempted to cheat or defraud plaintiff, by, among other things, liquidating plaintiff's positions in gold con-

tracts and silver contracts while claiming to be relying upon Soorty's inter-office memorandum that they knew, or should have known was a false report ...." [10] In addition, he states that "[w]hen defendants liquidated plaintiff's commodities account, defendants acted deliberately, knowing that their acts were unauthorized and contrary to plaintiff's instructions which violated the statutory prohibitions imposed by Section 4b and 4o of the Commodities Exchange Act [citation omitted] in that they cheated and defrauded the plaintiff by acting deliberately or with careless disregard of their duties to the plaintiff, and otherwise engaged in transactions, practices or courses of business that operated as a fraud or deceipt [sic] upon plaintiff." [11]

2. Defendants argue, *inter alia*, that plaintiff has not properly pleaded the elements of a CEA Section 4b fraud claim because the complaint does not allege that he relied upon defendants' alleged misrepresentation or that such reliance caused plaintiff's losses. Specifically, they assert that Markowitz could not have relied upon the Soorty memorandum of September 5, nor could it have caused his damages because there was nothing of substance in the memorandum that Markowitz did not already know at the time it was prepared. To demonstrate that Markowitz was aware of their position prior to September 5, they quote paragraph 15 of the complaint.

"On or about September 4, 1979, defendants told the plaintiff that defendants refused to reverse the transactions made on August 31, 1979 in December 1979 silver contracts upon the purported grounds that:

(a) defendants considered the orders placed by Soorty on August 31, 1979 silver contracts as being entirely plaintiff's responsibility;

---

7. See 7 U.S.C. § 6o.

8. 17 C.F.R. § 1.3(bb) (1983).

9. *See* 17 C.F.R. § 1.3(p) (1983).

10. Complaint at ¶ 17, *Markowitz v. Merrill Lynch, Pierce, Fenner & Smith*, No. 82 Civ. 5735(MEL) (S.D.N.Y. filed Aug. 30, 1982).

11. *Id.* at ¶ 18.

(b) the loss incurred on August 31, 1979 had to be borne solely by the plaintiff; and

(c) defendants intended to collect the unsecured debit created by these losses as soon as possible." [12]

Plaintiff responds that his Section 4b claim is nevertheless viable because the Second Circuit has held in *Haltmier v. CFTC* [13] that scienter is not an element of a cause of action under this section and that since he need not establish intent to defraud, it follows that a showing of reliance is not required. Markowitz argues that defendants have violated Section 4b because defendant Soorty cheated and defrauded him "by making a false report which Soorty 'cause[d] to be entered' when he knowingly gave a false version of the facts to [defendant] Freeburg and his other superiors." [14]

3. Section 4b of the CEA provides in relevant part:

"It shall be unlawful (1) for any member of a contract market, . . . or employee of any member, . . .

(A) to cheat or attempt to cheat or defraud such other person;

(B) willfully to make or cause to be made to such other person any false report or statement thereof, or willfully to enter or cause to be entered for such person any false record thereof;" [15]

■ In order to state an adequate cause of action under this section, it is necessary to allege that the wrongful conduct in question caused the damages that form the basis for the complaint. [16] In this instance, whether defendants violated the CEA turns upon determining whether plaintiff has properly alleged a causal nexus between defendants' conduct and his damages.

■ 4. In order to resolve this question, the complaint is interpreted as alleging that the Soorty memorandum was relied upon by the defendants (not the plaintiff) when they liquidated Markowitz's account, that the preparation and use of this report constituted fraudulent or deceitful conduct prohibited by Section 4b, and that it caused plaintiff's damages. [17] As a result, we hold that the complaint does not state a cause of action under Section 4b because Soorty's written memorandum and oral reports were not the cause of the liquidation of plaintiff's account.

Inasmuch as paragraph 15 of the complaint quoted above states that plaintiff was aware of defendants' position on September 4, before the preparation of Soorty's September 5 memorandum, plaintiff is incorrect when he alleges that he has been cheated and defrauded as a result of defendant's reliance upon the Soorty memorandum. Rather, the alleged facts indicate that defendants decided to liquidate plaintiff's account after they disclosed to him

12. *Id.* at ¶ 15, *quoted in,* Defendants' Reply Memorandum at 14.

13. 554 F.2d 556 (2d Cir.1977).

14. Plaintiff's Reply Memorandum at 14, *quoting,* 7 U.S.C. § 6b(B).

15. 7 U.S.C. § 6b.

16. *See Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 395, 102 S.Ct. 1825, 1848, 72 L.Ed.2d 182 (1982); *Chipser v. Kohlmeyer & Co.,* 600 F.2d 1061, 1068 (5th Cir.1979); *J.E. Hoetger & Co. v. Ascencio,* 572 F.Supp. 814, 820 (E.D.Mich.1983). *See also Schultz v. Incomco, Inc.,* No. R–80–4–80–415, slip op. (CFTC Jan. 17, 1983) (Available on WESTLAW, FSEC–CFTC data-base), *remanded sub nom, Schultz v. CFTC,* 716 F.2d 136, 139 (2d Cir.1983) (case remanded on ground that CFTC failed to determine whether CEA had been violated).

Additionally, the CFTC has noted that to bring a cause of action under Section 4b(A) of the CEA requires an allegation of bad faith or fraud on the futures commission merchant's part. *See Ball v. Shearson Hayden Stone, Inc.,* [1980–1982 Transfer Binder] COMM.FUT.L.REP. (CCH) ¶ 21,184, at 24, 875 (CFTC April 2, 1981); *Baker v. Edward Jones & Co.,* [1980–82 Transfer Binder] COMM.FUT.L.REP. (CCH) ¶ 21,167 (CFTC Jan. 27, 1981), *appeal dismissed on other grounds sub nom, Baker v. CFTC,* 661 F.2d 871 (10th Cir.1981). In light of the reasons discussed below for dismissing this complaint, whether plaintiff's pleadings satisfy this standard is not considered here.

17. While the complaint is not completely unambiguous, this finding has been informed by the oral and written submissions provided by both parties.

the material elements of their position on September 4. While the Soorty memorandum and the additional information contained in it was not brought to Markowitz's attention, none of the information which had not been already communicated to Markowitz by the defendants was sufficiently material to establish the memorandum as the supervening cause of the liquidation. Put another way, plaintiff's loss was not, according to the complaint, produced by the preparation of the Soorty memorandum of September 5, or by its circulation, but was instead caused by defendant's decision to act upon the position they had made known to the plaintiff on September 4, namely, their insistence that they were entitled to liquidate his account and their execution of their announced intention to do so. The complaint does not allege that the position taken by the defendants on September 4, described in paragraph 15 of the complaint, was a result of a scheme to cheat or defraud the plaintiff.[18]

Defendants' motion dismissing plaintiff's CEA Section 4b cause of action is therefore granted. Since defendants' motion has been made at the outset of the litigation, there is no justification to maintain jurisdiction over the pendent non-federal claims.[19] Accordingly, the complaint is dismissed without prejudice, and the remaining grounds for summary judgment or dismissal need not be considered.

Defendants' motion to dismiss is granted. Plaintiff's cross-motion is denied. The complaint is dismissed without prejudice.

It is so ordered.

---

**18.** In addition, plaintiff's reliance upon *Haltmier v. CFTC*, 554 F.2d 556 (2d Cir.1977), and its progeny, *see, e.g., Herman v. T & S Commodities, Inc.*, No. 82 Civ. 4855(LBS), 578 F.Supp. 601 (S.D.N.Y. Sept. 16, 1983), does not affect the preceding analysis. In any event, however, we note that *Haltmier* is distinguishable from the facts alleged here. While plaintiff has properly alleged that defendants acted deliberately, the holding in *Haltmier* can be attributed to the

fact that the plaintiff in that case did not know of the defendant's wrongful conduct. In this case, on the other hand, plaintiff was aware of defendants' position before they liquidated his account.

**19.** *See United Mine Workers v. Gibbs*, 383 U.S. 715, 727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).